UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JUAN CADAVID-YEPES,

          Petitioner,

v.

UNITED STATES OF AMERICA,

          Respondent.
_____/

CRIM. CASE NO. 06-20421
CIVIL CASE NO. 13-10556

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

**OPINION AND ORDER**
**DENYING PETITIONER JUAN CADAVID-YEPES'**
**MOTION FOR RELIEF PURSUANT TO 28 U.S.C. § 2255**

      Petitioner challenges his plea conviction and sentence of 97 months incarceration. On his direct appeal, the U.S. Court of Appeals for the Sixth Circuit stated:

> The district court focusing on what conduct was reasonably foreseeable from the defendant's actions, found that Cadavid was accountable for twenty-five kilograms based on the "testimony, exhibits [and] the argument'[s].

*U.S. v. Cadavid-Yepes*, 446 Fed. App'x 802, 810, 2012 WL141744 (6th Cir. 2012). The Sixth Circuit concluded:

> The evidence established Cadavid's knowledge of and association with the ultimate sale of a twenty-five kilogram drug such that he can be held responsible for it even if he was not present for the transaction.

*Id.*

The Court of Appeals noted that some of his claims would best be raised in a "2255 motion

1

raising claims of ineffective assistance of counsel." *Id.* 808.

As an aid in the discussion of Defendant's Sixth Amendment ineffective assistance of counsel claims, this Court is attaching a copy of Defendant's Plea Transcript to this Opinion and Order. The transcript establishes that the Court conducted a very thorough and probing plea colloquy at which Defendant had an interpreter, that clearly established (1) that he had, prior to his plea, spoken with his attorney at the Dickerson Jail, and spoken with him at-length the day of the Plea (Plea Tr. 9-9-09, pp. 4-5) and (2) that he was satisfied with his counsel, (*id.* 5, 7), and (3) that there were no "side deals" that are not in the agreement (*id.* 13), and (4) that his sentence could be 97-121 months (Gov't work sheets) or 21-27 months (Defendant's work sheets), and the Court would determine which range to adopt at the sentencing (*id.* 10-11). Defendant was clearly and thoroughly advised on these issues by the Court, and Defendant acknowledged that his plea of guilty could expose him to a Guideline prison sentence range of 97-121 months. (*Id.* 10-11). The Court finds that Defendant's testimony, as set forth in the plea proceeding transcript, clearly rebuts any claim that he could assume that some other lesser sentence, much less time served, was guaranteed by his guilty plea to Count 3.

Basically, what Defendant is requesting, is that the Court ignore his sworn statements at the plea proceeding. There were no surprises at the sentencing: the Court adopted the Government's calculation, and rejected Defendant's calculation; Defendant received a sentence at the bottom of the 97-121 sentencing guideline range adopted by the Court.

There is no necessity for an evidentiary hearing. Defendant's plea testimony in response to the Court's probing questions was clear and on point: he understood the potential for a 97-121 month sentence. Defendant's attempt in his § 2255 motion at dissembling what took place at the

plea proceeding, cannot make neither his plea testimony disappear, nor the Sixth Circuit's affirmance of this Court's finding tying him to the sale of the 25 kilogram drum. Indeed, this Court, at the sentencing hearing, noted its assumption that the sale and transfer of the 25 kilogram drum would have occurred in Columbia or Mexico (not the U.S.). Thus, there is no need for further testimony to establish this factual scenario, and thus that foreign location does not support any ineffective assistance of counsel claim.

Defendant's claims of ineffective assistance of counsel relate to (1) the plea, and (2) the amount of drugs involved. Neither requires an evidentiary hearing.

First, Defendant seeks, in the face of a very clear plea colloquy, to undermine the reality of the words contained in the plea transcript. An evidentiary hearing is not required to establish the validity of the plea as set forth in the attached transcript.

Further, two months before the plea, in July 2009, Defendant wrote a letter to his second attorney (the attorney representing him at his plea) stating that he well understood the Rule 11 plea agreement would leave the issue of the Sentencing Guideline range up to the Court, and that if he were to plead guilty to Count 3 of the indictment, the Government would argue that his Guideline range would be 87-108 months. (Defendant's Letter to Attorney Niskar, Dkt. #79). Ultimately, pre-plea the Government's Guideline calculation range changed to 97-121 months, but Defendant was well aware of that prior to the plea, as acknowledged in both the Rule 11 that he signed from his pre-plea meeting with counsel, and from the Court's plea colloquy.

Sixth Circuit precedent binds a Defendant to his responses to the Court. *Baker v. U.S.*, 781 F.2d 85, 90 (6th Cir. 1986) (Judge Cornelia Kennedy wrote "that where the court has scrupulously followed the required procedure, the defendant is bound by his statements in

response to that court's inquiry)"; *U.S. v. Todaro*, 982 F.2d 1025, 1029-30 (6th Cir. 1993).

Here Defendant's statements at the plea proceeding, the Sixth Circuit's affirmation of the amount of drugs involved, and his July 2009 letter to counsel fully undermine his current claims for relief.

Accordingly, the Court denies Defendant's Petition for Relief pursuant to 28 U.S.C. § 2255.

SO ORDERED.

DATED: JUL 1 7 2014

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

PLEA HEARING                                                         3

```
 1                                      September 9, 2009
 2                                      Detroit, Michigan
 3                            -  -  -
 4        (Call to order of the Court, 2:40 p.m.)
 5        (Court, Counsel and Defendant present.)
 6        THE COURT CLERK:  United States of America versus Juan
 7   Cadavid-Yepes, 06-20421.
 8        THE COURT:  Parties please identify themselves for the
 9   record beginning with the government.
10        MR. GARDEY:  Good afternoon, Your Honor.  David Gardey
11   on behalf of the United States.
12        MR. NISKAR:  Good afternoon, Your Honor.  May it
13   please the Court, Joseph Niskar on behalf of and with
14   Mr. Cadavid.
15        THE COURT:  Okay.  If you and Mr. Cadavid could please
16   come to the podium, that will assist.
17        Also, we have for the record here the interpreter,
18   Maria Longley.  If Miss Goodine would please swear in
19   Miss Longley.
20        THE COURT CLERK:  Please raise your right hand.
21     (Maria Longley, Interpreter, sworn, 2:41 p.m.)
22        THE COURT:  Mr. Niskar, my understanding is that this
23   purpose is for a plea; is that correct?
24        MR. NISKAR:  That's correct, Your Honor.
25        THE COURT:  Okay.  I received a letter from
```

PLEA HEARING                                                                4

```
 1  Mr. Cadavid on, well, beginning of August.  It was dated
 2  July 28th.  This is your letter that you wrote to the Court,
 3  sir.
 4              THE DEFENDANT:  Yes, Your Honor.
 5              THE COURT:  Let me ask a question.
 6              THE DEFENDANT:  No.  Someone wrote it for me.
 7              THE COURT:  Because it's in perfect English, and
 8  that's why I was wondering why we have an interpreter.  In your
 9  letter though that you had someone write for you, you indicated
10  that you had problems in communicating -- this is about five
11  weeks ago -- with your attorney, Mr. Niskar.  Have you been
12  meeting with your attorney prior to this plea today?
13              THE DEFENDANT:  What happened is that I received the
14  letter from Mr. Niskar that -- on the 29th that the trial was
15  going to be on the 17th of this month.  So I got a little
16  confused, so I sent a letter to you saying that I had talked to
17  Mr. Niskar saying that I was going to plead guilty.
18              THE COURT:  Okay.  But in this letter you indicate
19  that he hasn't met with you.  Have you had a chance to meet
20  with him prior to today's plea agreement?
21              THE DEFENDANT:  In Dickerson once, and I was not able
22  to talk to him until today.
23              THE COURT:  Okay.  Did you talk to him at length
24  today?
25              THE DEFENDANT:  Yes, Your Honor.
```

PLEA HEARING 5

1  THE COURT: Are you satisfied that he is effectively
2  representing you and that you know what you're doing and that
3  legally and otherwise you want to plead guilty?
4  THE DEFENDANT: Yes, Your Honor.
5  THE COURT: Okay. Then we'll move on past this letter
6  that I have received and recognize that the Defendant is both
7  very bright, very aware of what's going on and has desired
8  having Mr. Niskar represent him.
9  At this point then, Miss Goodine, would you please
10 swear in Mr. Cadavid for the purpose of a plea.
11 THE COURT CLERK: Please raise your right hand.
12 (Juan Cadavid-Yepes, sworn, 2:43 p.m.)
13 THE COURT: Mr. Cadavid, I'm going to be asking you
14 questions regarding the facts of the crime charged. It's
15 important you tell the truth. You understand that, sir?
16 THE DEFENDANT: Yes, Your Honor.
17 THE COURT: Okay. Any false answers can be used
18 against you in a separate prosecution for perjury or false
19 statement. Do you understand that?
20 THE DEFENDANT: Yes, Your Honor.
21 THE COURT: What is your full name?
22 THE DEFENDANT: Juan Gregorio Cadavid-Yepes.
23 THE COURT: Why don't you spell the Gregorio because
24 we don't have that written down on the indictment.
25 THE DEFENDANT: G-r-e-g-o-r-i-o.

**PLEA HEARING** 6

```
 1            THE COURT:  Thank you.  You understand, Mr. Cadavid,
 2   that you have a constitutional right to remain silent and not
 3   incriminate yourself.  You understand?
 4            THE DEFENDANT:  Yes, Your Honor.
 5            THE COURT:  And you want to give that up and plead
 6   guilty today; is that correct?
 7            THE DEFENDANT:  Yes, Your Honor.
 8            THE COURT:  First I'm going to ask some background
 9   questions to assure that you're competent to enter a plea at
10   this time.  How old are you, sir?
11            THE DEFENDANT:  51, Your Honor.
12            THE COURT:  Okay.  And how far did you go in school?
13            THE DEFENDANT:  Fifth year of high school.
14            THE COURT:  Do you read, write and understand the
15   Spanish language?
16            THE DEFENDANT:  Yes, Your Honor.
17            THE COURT:  Are you now under the influence of any
18   medication, drugs or alcohol?
19            THE DEFENDANT:  No, Your Honor.
20            THE COURT:  I find that Mr. Cadavid is capable of
21   entering a knowing plea.  Do you agree, Mr. Niskar?
22            MR. NISKAR:  I agree.
23            THE COURT:  Do you agree, Mr. Gardey?
24            MR. GARDEY:  Yes, sir.
25            THE COURT:  You have your attorney, Mr. Niskar, beside
```

PLEA HEARING 7

```
 1  you in court today.  Have you discussed this matter with him?
 2          THE DEFENDANT:  Yes, Your Honor.
 3          THE COURT:  And are you satisfied with his advice and
 4  service?
 5          THE DEFENDANT:  I agree with him.
 6          THE COURT:  Okay.  You understand that if I accept
 7  your guilty plea, you give up many important rights under the
 8  United States Constitution, and I'm going to go over some of
 9  the most important, make sure you understand what you're giving
10  up.
11          You understand, Mr. Cadavid, that you have the right
12  to plead not guilty and to have a trial before the Court or a
13  jury of American citizens.  You understand that?
14          THE DEFENDANT:  Yes, Your Honor.
15          THE COURT:  You understand at trial you'd be presumed
16  innocent and the government would have to prove you guilty
17  beyond a reasonable doubt.  You understand that?
18          THE DEFENDANT:  Yes, Your Honor.
19          THE COURT:  Also at trial, you could question
20  witnesses against you through your attorney and have the Court
21  order any witnesses you have for your defense to appear at
22  trial.  Do you understand that?
23          THE DEFENDANT:  Yes, Your Honor.
24          THE COURT:  Also at trial, you could remain silent,
25  not have your silence used against you or testify if you wanted
```

**PLEA HEARING** 8

1  to testify. Do you understand that?
2         THE DEFENDANT: Yes, Your Honor.
3         THE COURT: Understanding all these rights, do you
4  want to give them up and plead guilty today?
5         THE DEFENDANT: Correct, correct.
6         THE COURT: Okay. Basically he's going to plead
7  guilty to count three of the superseding information. Is that
8  correct, Mr. Gardey?
9         MR. GARDEY: Yes, Your Honor.
10        THE COURT: And, Mr. Niskar; is that correct?
11        MR. NISKAR: Indictment, but yes.
12        THE COURT: I'm sorry. Superseding indictment. Yes.
13        Count three of the indictment says on or about
14 May 23rd, 2006, in this district and elsewhere that you
15 knowingly and intentionally imported into the United States
16 from outside chemicals with the intent to manufacture a
17 controlled substance in violation of the law. You understand
18 that?
19        THE DEFENDANT: Yes, Your Honor.
20        THE COURT: Okay. And, further, it also says that
21 pursuant to the law this violation involved ephedrine,
22 e-p-h-e-d-r-i-n-e, and phenylpropanolamine, both list one
23 chemicals. And phenylpropanolamine is spelled
24 p-h-e-n-y-l-p-r -- p-a-n-o-l-a-m-i-n-e. Do you understand that
25 that's the charge?

PLEA HEARING 9

```
 1        THE DEFENDANT:  Yes, Your Honor.
 2        THE COURT:  Okay.  Is your willingness to plead guilty
 3   the result of what's called a Rule 11 plea agreement where you
 4   and your attorney, Mr. Niskar, and Mr. Gardey of the government
 5   have reached a basis for pleading guilty?
 6        THE DEFENDANT:  Yes, Your Honor.
 7        THE COURT:  Okay.  And if you turn to page seven, is
 8   that your signature above the name Juan Cadavid Yepes?
 9        THE DEFENDANT:  Yes, Your Honor.
10        THE COURT:  Mr. Niskar, that's yours?
11        MR. NISKAR:  Yes, Your Honor.
12        THE COURT:  Mr. Gardey, that's yours?
13        MR. GARDEY:  Yes, Your Honor.
14        THE COURT:  Did you go over this agreement with your
15   lawyer before you signed it?
16        THE DEFENDANT:  Yes, Your Honor.
17        THE COURT:  Okay.  Now, under the statute the maximum
18   amount of jail time is 20 years.  You understand that?
19        THE DEFENDANT:  Yes, Your Honor.
20        THE COURT:  Okay.  The fine is up to $250,000.  Do you
21   understand that?
22        THE DEFENDANT:  Yes, Your Honor.
23        THE COURT:  And the period of supervised release is up
24   to three years.  Do you understand that?
25        THE DEFENDANT:  Yes, Your Honor.
```

PLEA HEARING                                            10

```
 1         THE COURT:  That means that after you're out of jail
 2   on supervised release, out on the street, if you violate that,
 3   you could be brought back, sent to jail for up to another three
 4   years.  Do you understand that?
 5         THE DEFENDANT:  Yes, Your Honor.
 6         THE COURT:  Under the Rule 11 plea agreement, the
 7   range is 97 to 121 months.  Is this correct?
 8         MR. NISKAR:  Your Honor, there's a disagreement
 9   between the parties.
10         THE COURT:  Okay.  Because the next sentence --
11         MR. NISKAR:  There's a disagreement as to both
12   relevant conduct and role in the offense, and so there are two
13   sets of work sheets that are attached to the Rule 11 agreement.
14         THE COURT:  Okay.
15         MR. NISKAR:  We believe that the second set of work
16   sheets which results in a range of 21 to 27 months is the
17   correct guideline.
18         THE COURT:  So this will be before the Court to
19   determine --
20         MR. NISKAR:  That's right.
21         THE COURT:  -- at the time of sentencing.
22         MR. NISKAR:  That's right.
23         THE COURT:  So in the Rule 11, the government believes
24   that the guideline range is 97 to 121 months.  Do you
25   understand that, Mr. Cadavid?
```

**PLEA HEARING** 11

```
 1              THE DEFENDANT: Yes, Your Honor.
 2              THE COURT: The Defendant recommends that the
 3   guideline range should be 21 to 27 months. Do you understand
 4   that?
 5              THE DEFENDANT: Yes, Your Honor.
 6              THE COURT: At the sentencing the Court will determine
 7   the proper guideline range. Do you understand that?
 8              THE DEFENDANT: Yes, Your Honor.
 9              THE COURT: But apart from the guideline range, the
10   Court must also look at other factors to determine the
11   appropriate sentence. Do you understand that?
12              THE DEFENDANT: Yes, Your Honor.
13              THE COURT: And those factors include the nature of
14   the offense, the characteristics of the Defendant, the
15   seriousness of the offense insofar as the sentence should
16   reflect it. Also the sentence is supposed to promote respect
17   for the law, provide just punishment, afford adequate
18   deterrence and protect the public from further crimes. Do you
19   understand -- those are also factors to consider, that the
20   Court must consider at the time of sentence. Do you
21   understand --
22              THE DEFENDANT: Yes, Your Honor.
23              THE COURT: There's also a period of supervised
24   release of up to three years. You understand that, after
25   any --
```

PLEA HEARING                                              12

```
 1         THE DEFENDANT:  Correct, yes.
 2         THE COURT:  -- any sentence?
 3         Special assessment of $100.  Do you understand that?
 4         THE DEFENDANT:  Yes, Your Honor.
 5         THE COURT:  There's also a fine of up to $250,000.  Do
 6  you understand that?
 7         THE DEFENDANT:  Yes, Your Honor.
 8         THE COURT:  Okay.  If I sentence you under either
 9  parties' guideline range, then you waive your right to appeal
10  the conviction or sentence.  You understand that?
11         THE DEFENDANT:  Yes, Your Honor.
12         THE COURT:  Any other provisions of the Rule 11 you
13  want to put on the record, Mr. Gardey?
14         MR. GARDEY:  No, Your Honor.
15         THE COURT:  Mr. Niskar?
16         MR. NISKAR:  That upon acceptance of the agreement,
17  counts one and two in the superseding information the
18  government will move to dismiss.
19         THE COURT:  Indictment.
20         MR. NISKAR:  Did I say information?
21         THE COURT:  Gotcha.
22         MR. NISKAR:  Well, you did.
23         THE COURT:  I know.
24         MR. NISKAR:  Indictment.  The government will move to
25  dismiss upon your acceptance?
```

PLEA HEARING                                13

```
 1         THE COURT:  Correct, Mr. Gardey?
 2         MR. GARDEY:  That's correct.
 3         THE COURT:  Okay.
 4         MR. NISKAR:  And that is all.
 5         THE COURT:  Okay.  Mr. Cadavid, apart from what's
 6  contained in this Rule 11 plea agreement, have I made you any
 7  promise of any sentence or probation or anything like that?
 8         THE DEFENDANT:  No, Your Honor.
 9         THE COURT:  Are there any side deals that you've made
10  with Mr. Niskar and Mr. Gardey that aren't in this agreement?
11  Do you got any side deals?
12         THE DEFENDANT:  No, just that.
13         THE COURT:  Are you pleading guilty freely and
14  voluntarily?
15         THE DEFENDANT:  Voluntarily.
16         THE COURT:  No one threatened or coerced you to plead
17  guilty?
18         THE DEFENDANT:  No, Your Honor.
19         THE COURT:  Right now, is Mr. Cadavid under pretrial
20  release, probation, parole or any other sentence?
21         MR. NISKAR:  No, Your Honor.
22         THE COURT:  Please tell me what you did on or about
23  May 23rd, 2006, that leads you to believe that you are guilty
24  of importing listed chemicals in violation of the law.
25         THE DEFENDANT:  I helped another person to send a
```

PLEA HEARING                                                         14

```
 1  sample of a chemical product.
 2          THE COURT: Okay. Was this chemical ephedrine and
 3  phenylpropanolamine?
 4          THE DEFENDANT: Supposedly it is what the toxicology
 5  exam analysis says.
 6          THE COURT: Okay. Mr. Gardey, did that exam yield
 7  what chemicals?
 8          MR. GARDEY: Yes, Your Honor. The DEA lab examined
 9  the two samples that were sent -- that were received in the
10  package in Detroit in May of 2006, and the lab determined that
11  they contained -- one pen contained ephedrine, and the other
12  pen contained phenylpropanolamine.
13          THE COURT: Okay. And you accept that, Mr. Niskar?
14          MR. NISKAR: I do.
15          THE COURT: And you accept as well, Mr. Cadavid?
16          THE DEFENDANT: Yes, Your Honor.
17          THE COURT: Okay. Any further questions you want me
18  to ask with regard to a -- was it in Detroit? Were you
19  shipping it to Detroit?
20          THE DEFENDANT: I know that I have knowledge that,
21  yes, he was sending it to Detroit.
22          THE COURT: Okay. And you knew it was in violation of
23  the law to ship that chemical?
24          THE DEFENDANT: No. Supposedly, no. Right now I know
25  that it was. Until I arrived here, I didn't know that it was a
```

PLEA HEARING                                                         15

```
 1  crime in the United States.
 2          THE COURT:  Okay.  Do you want to ask further
 3  questions, Mr. Gardey, for regarding a factual basis?
 4          MR. GARDEY:  No, Your Honor.  I don't believe that
 5  it's required that he know that it's a crime in the United
 6  States.
 7          THE COURT:  It was a banned substance.  That's
 8  correct.  That's what you're saying.
 9          MR. GARDEY:  Yes, Your Honor.
10          THE COURT:  And you did intend to send the substance
11  to the United States.  You mailed it?  The package was coming
12  to the United States; is that correct?
13          THE DEFENDANT:  I didn't mail it.
14          THE COURT:  Someone did and --
15          THE DEFENDANT:  Someone else did.
16          THE COURT:  And you --
17          THE DEFENDANT:  I gave him the $100 that the informant
18  sent.
19          THE COURT:  To send that stuff to the United States?
20          THE DEFENDANT:  Yes, to send out to the United States.
21          THE COURT:  And he sent it to Michigan?
22          THE DEFENDANT:  The other gentleman is the one who
23  sent it.
24          THE COURT:  Who what?
25          THE DEFENDANT:  The other gentleman was the one who
```

PLEA HEARING                                           16

1   sent it.
2           THE COURT:  Okay.  Mr. Gardey, any further questions
3   you want to ask.
4           MR. GARDEY:  No, Your Honor.
5           THE COURT:  Mr. Niskar, any questions?
6           MR. NISKAR:  No, Your Honor.
7           THE COURT:  How do you plead, sir, guilty or not
8   guilty?
9           THE DEFENDANT:  I am guilty, Your Honor.
10          THE COURT:  The Court finds the Defendant's plea is
11  knowingly, freely, voluntarily made.  The elements to the
12  offense to which he pled guilty have been made out by his
13  statements in court.  Plea of guilty is accepted.  Rule 11
14  taken under advisement.  Refer to the probation department for
15  the probation report.
16          Miss Goodine, if you'd help us, give us a date for
17  sentencing, that would be good.
18          MR. NISKAR:  Just to advise the Court, if we could
19  have a date and time that would be convenient for the Court,
20  because I think we'll need a little extra time than a normal
21  sentencing --
22          THE COURT:  Right.
23          MR. NISKAR:  -- in order to put on the proofs.
24          THE COURT:  We'll leave a whole afternoon open.
25          MR. NISKAR:  Right.

USA v. CADAVID-YEPES, 06-20421

**PLEA HEARING** 17

```
 1            THE COURT:  Or a whole morning.
 2            THE COURT CLERK:  December the 15th.  That's
 3  probably -- no, that's not a good date.  December the 14th at
 4  2:00.
 5            THE COURT:  December 14th, 2:00.  Okay, Mr. Gardey?
 6            MR. GARDEY:  Yes, Your Honor.
 7            THE COURT:  Okay, Mr. Niskar?
 8            MR. NISKAR:  Yes, Your Honor.
 9            THE COURT:  And we'll get Miss Longley or a suitable
10  replacement, and we'll see you then.
11            THE INTERPRETER:  Thank you, Your Honor.
12            MR. NISKAR:  Thank you, Your Honor.  One other thing,
13  if I could have a copy of the letter.
14            THE COURT:  Sure.
15            MR. NISKAR:  I have not seen that.  At any time.  It
16  doesn't have to be today.
17            THE COURT:  We'll send you a copy of the letter.
18            Here, Miss Goodine.  I'll attach it to the top of the
19  file so we can get a copy made and sent.
20            MR. GARDEY:  Your Honor, I don't know if it would be
21  possible if I could get a copy as well.
22            THE COURT:  That's appropriate.  Okay.  We'll go for
23  two.  Okay.  Thank you.
24            MR. GARDEY:  Thank you.
25            THE COURT:  Great.
```

**PLEA HEARING** 18

1      MR. NISKAR:  Thank you.
2  (Proceedings concluded, 2:58 p.m.)
3                       -   -   -